Michael F. Ram (SBN 104805)
mram@rocklawcal.com
Susan S. Brown (SBN 287986)
sbrown@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP
101 Montgomery Street, Suite 1800
San Francisco, California  94104
Telephone:  (415) 433-4949
Facsimile:  (415) 433-7311

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN BURGOON and CALEB LANDERS, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br> vs.<br><br>NARCONON OF NORTHERN CALIFORNIA d/b/a NARCONON REDWOOD CLIFFS, HALCYON HORIZONS, a California Corporation; NARCONON FRESH START d/b/a WARNER SPRINGS, a California Corporation; ASSOCIATION FOR BETTER LIVING AND EDUCATION INTERNATIONAL, a California Corporation; NARCONON WESTERN UNITED STATES, a California Corporation;  NARCONON INTERNATIONAL, a California Corporation; and DOES 1-100, ROE Corporations I – X, inclusive,<br><br>      Defendants. | Case No. 3:15-cv-01381-EMC<br><br>**STIPULATION AND [PROPOSED] ORDER (1) GRANTING LEAVE TO FILE SECOND AMENDED COMPLAINT AND (2) TRANSFERRING CASE TO THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1391**<br><br>―――――――――――――<br><br>**Hon. Edward M. Chen**<br><br>**JURY TRIAL DEMANDED**<br><br>**Complaint Filed:  March 25, 2015** |

**I.     STIPULATION RE FILING OF SECOND AMENDED COMPLAINT**

Pursuant to the Court's Civil Minutes of March 10, 2016 (Dkt. 16), the Parties, by and through their counsel, hereby stipulate to the filing of the proposed Second Amended Complaint attached hereto as **Exhibit A**.  The proposed Second Amended Complaint dismisses Nathan Burgoon's claims and adds as proposed class representatives Connie Rana and Jamie Kerzner, each of whom have claims against all defendants except Narconon of Northern California (NNC)**.**  As a condition of the stipulation to the filing of the Second Amended Complaint, the parties also stipulate as follows with respect to venue.

**II.    STIPULATION RE VENUE**

**WHEREAS**, the claims of Nathan Burgoon, which concern events that took place in the Northern District of California, have been settled, and

**WHEREAS** the remaining defendants are all located in the Central District of California, and

**WHEREAS** the new proposed class representatives do not reside in the Northern District of California and did not have dealings with Defendants in the Northern District of California,

**NOW THEREFORE, PLAINTIFFS AND DEFENDANTS STIPULATE** that venue in the Central District of California is proper pursuant to **28 U.S.C. § 1391,** and hereby respectfully request that the Court transfer this matter to the Central District of California pursuant to 28 U.S.C. § 1404.

Dated:  March 24, 2016          By:     ***/s/ Michael F. Ram***_____
                                               Michael F. Ram (SBN 104805)
                                               mram@rocklawcal.com
                                               Susan S. Brown (SBN 287986)
                                               sbrown@rocklawcal.com
                                               RAM, OLSON, CEREGHINO & KOPCZYNSKI
                                               101 Montgomery Street, Suite 1800
                                               San Francisco, California  94104
                                               Telephone:  (415) 433-4949
                                               Facsimile:  (415) 433-7311

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Beth E. Terrell, SBN #178181
Email:  bterrell@tmdwlaw.com
Mary B. Reiten, SBN #203142
Email:  mreiten@tmdwlaw.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

Syed Ali Saeed, Admitted Pro Hac Vice
Email:  ali@sllawfirm.com
David E. Miller, SBN #294095
Email:  david@sllawfirm.com
SAEED & LITTLE LLP
1433 North Meridian Street, Suite 202
Indianapolis, Indiana  46202
Telephone:  (317) 721-9214
Facsimile:  (888) 422-3151
*Attorneys for Plaintiffs*

Dated:  March 24, 2016          By:    /s/ William H. Forman
                                       William H. Forman, SBN #150477
                                       Email:  wforman@scheperkim.com
                                       Gregory Ellis, SBN # 204478
                                       Email:  gellis@scheperkim.com
                                       SCHEPER KIM & HARRIS LLP
                                       601 West 5th Street, 12th Floor
                                       Los Angeles, California 90071
                                       Telephone:  (213) 613-4682
                                       Facsimile:  (213) 613-4656
                                       *Attorneys for Defendants Narconon Int'l, Narconon*
                                       *Fresh Start d/b/a Warner Springs and Association*
                                       *for Better Living and Education*

1

2

### PROPOSED ORDER

3      Based on the foregoing stipulation of the parties and good cause appearing, therefore,

4  IT IS HEREBY ORDERED that:

5      1.  Plaintiffs may file their proposed Second Amended Complaint attached hereto as Exhibit

6          A.

7      2.  Upon filing of the Second Amended Complaint, pursuant to 28 U.S.C. §§ 1391 and 1404,

8          this matter shall be transferred to the Central District of California.

9

10

11  Dated:      3/28/2016



The Hon. Edward M. Chen

Judge Edward M. Chen

# EXHIBIT A

Michael F. Ram (SBN 104805)
mram@rocklawcal.com
Susan S. Brown (SBN 287986)
sbrown@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP
101 Montgomery Street, Suite 1800
San Francisco, California  94104
Telephone:  (415) 433-4949
Facsimile:  (415) 433-7311

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNIE L. RANA and JAMIE KERZNER, on behalf of themselves and all others similarly situated, | Case No. 3:15-cv-01381-EMC |
| Plaintiffs, | **SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:** |
| vs. | |
| NARCONON FRESH START d/b/a WARNER SPRINGS, a California Corporation; ASSOCIATION FOR BETTER LIVING AND EDUCATION INTERNATIONAL, a California Corporation; NARCONON WESTERN UNITED STATES, a California Corporation; NARCONON INTERNATIONAL, a California Corporation; and DOES 1-100, ROE Corporations I – X, inclusive, | 1. **Consumers Legal Remedies Act Cal. Civ. Code § 1780** <br> 2. **Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*** <br> 3. **False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*** <br> 4. **Negligent Misrepresentation** |
| Defendants. | **Hon. Edward M. Chen** |
| | **JURY TRIAL DEMANDED** |

Plaintiffs Connie L. Rana and Jamie Kerzner, by and through their counsel, file their

Complaint for Class Action and Jury Demand on behalf of themselves and all others similarly

situated:

---

SECOND AMENDED CLASS ACTION COMPLAINT - 1

## I. **PARTIES**

1.     Plaintiffs received and/or paid for "drug treatment" services in treatment facilities located in California.

2.     Defendant Narconon Fresh Start owns and operates various Narconon "drug rehabilitation" centers, including the facility located in Warner Springs, California and Caliente, Nevada (the facilities will be collectively referred to as "NFS").  NFS is, and at all times relevant to this Complaint was, a corporation incorporated under the laws of, and with its principal place of business in, the State of California.

3.     NFS has its principal place of business in California and may be served with process through its registered agent, P. Mark Kirwin, 4480 Market Street, Suite 804, Ventura, California, 93003.

4.     Defendant Narconon International ("NI") is a California corporation with its headquarters in Los Angeles, California.

5.     NI is the principal and licensor of various drug rehabilitation centers throughout the United States ("Narconon Centers"), including Defendant NFS.  All references to Narconon Centers in this complaint include by reference those centers owned and/or operated by NFS.  NI exercises control over the time, manner, and method of operations of all Narconon Centers.

6.     NI has its principal place of business in the State of California and may be served with process through its registered agent, Timothy Bowles, 1 South Fair Oaks Avenue, Pasadena, California, 91105.

7.     All Narconon Centers and NI are subsidiaries of the Association for Better Living and Education International ("ABLE").  ABLE oversees the drug rehabilitation, education, and criminal justice activities of the Church of Scientology including, but not limited to, Narconon Centers and NI.  The Church of Scientology describes itself as "a religion that offers a precise path leading to a complete and certain understanding of one's true spiritual nature and one's relationship to self, family, groups, Mankind, all life forms, the material universe, the spiritual universe and the Supreme Being." (http://www.scientology.org/what-is-scientology.html (last

---

SECOND AMENDED CLASS ACTION COMPLAINT - 2

visited March 12, 2015)).  It is recognized by the IRS as tax-exempt under section 501(c)(3) of the Internal Revenue Code. (http://www.scientology.org/faq/church-funding/significance-of-irs-ruling.html (last visited March 12, 2015)).

8.     Defendant ABLE is a corporation registered in the State of California and may be served with process through its registered agent, Timothy Bowles, 1 South Fair Oaks Avenue, Pasadena, California, 91105.

9.     ABLE controls the time, manner, and method of NI's and all Narconon Centers' businesses by, among other things, actively managing their daily operations, including conducting inspections and creating, licensing, and approving their marketing materials.

10.     Defendant Narconon Western United States ("Western") is a corporation registered in the State of California with its headquarters in Los Angeles, California.

11.     Western controls the time, manner, and method of NFS's and other Narconon Centers' businesses by, among other things, actively managing their daily operations and creating, controlling, and approving their marketing materials.

12.     Western transacts business in the State of California and may be served with process through its registered agent, Luria K. Dion, 249 North. Brand Boulevard #384, Glendale, California, 91203.

13.     Defendants' decisions about advertising and marketing of the Narconon Program, including their decisions to include misrepresentations in and to omit material facts from their advertising and marketing campaign occurred in California and all misrepresentations and material omissions emanated from California.

14.     NFS, NI, Western, and ABLE are collectively referred to as "Defendants."

## II.     JURISDICTION AND VENUE

15.     Subject Matter Jurisdiction.  This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d) because the combined claims of the proposed class members exceed $5,000,000 and because some members of the Class are citizens of states other than California.

16.     <u>Personal Jurisdiction</u>.  This Court has personal jurisdiction over Defendants because each has registered with the California Secretary of State for the privilege of conducting business in California, and the wrongful acts alleged in this Complaint were committed in California.

17.     <u>Venue</u>.  Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District; and (2) 28 U.S.C. § 1391(b)(3) in that Defendants are subject to personal jurisdiction in this District.

### III.     <u>FACTS</u>

18.     The "drug treatment" program offered at Narconon Centers (the "Narconon Program") is a standardized program marketed as treatment for individuals dealing with some form of addiction ("Patients").

19.     The Narconon Program is standardized and is substantially identical at every Narconon Center, including the course of "treatment" prescribed and the literature assigned to Patients to read.

20.     Each Narconon Center licenses the Narconon Program and the Narconon trademark from NI.

21.     The Narconon Program is substantially identical to the religious practices prescribed and practiced by the Church of Scientology, which is based on the ideas of L. Ron Hubbard, the founder of the Scientology Religion.  Hubbard incorporated NI in 1970, together with fellow Scientologist, William Benitez.

22.     Defendant ABLE was incorporated in 1988 and is the entity responsible for licensing the Narconon trademark to NI on behalf of the Church of Scientology (the "License Agreement").

23.     This License Agreement includes the rights to intellectual property owned by the Church of Scientology and utilized in the Narconon Program.

24.    The Narconon Program consists of eight courses founded upon the works of L. Ron Hubbard. These are based on Scientology scriptures called Hubbard Communications Office Bulletins ("HCOBs") and are substantially identical to the religious practices, doctrines, and rituals of the Church of Scientology.

25.    HCOBs or "Tech Bulletins" are a series of documents that define and describe Scientology's religious practices, including "auditing" – a method of verbal communication between an "auditor" and a Scientology devotee allegedly intended to bring about psychological or spiritual healing; the use of "e-meters" -  a machine devised by L. Ron Hubbard that purports to measure changes in the electrical resistance of the human body and thereby facilitate spiritual growth or healing through the auditing process; and "thetans" – entities that the Church of Scientology teaches are immortal, reincarnated spiritual beings of alien origin that comprise all human life and from which the material world was willed into being.

26.    NI provides manuals (the "Training Manuals") to each Narconon Center through which it directs the implementation and administration of the Narconon Program at all Narconon Centers. Through these Training Manuals and through centralized control and oversight, Defendants provide the same program at every Narconon Center.

27.    Each Narconon Center licensed to use the Narconon Program must do so under strict adherence to the guidelines set forth by NI.

28.    The Training Manuals are and derived from Scientology scriptures. The Training Manuals frequently reference foundational Scientology concepts, doctrines, and terminology including but not limited to: the "Eight Dynamics of Existence;" the "Cycle of Communication;" the "Conditions of Existence;" the "Suppressive Person Doctrine;" "Overts and Withholds;" and "the A-R-C triangle."  Each of these terms and concepts are central to, and unique to, the Scientology Religion.

29.    The administrative structure of the Narconon Centers is modeled after Scientology churches or "orgs" using Hubbard Communications Office Policy Letters ("Policy

Letters").  Policy Letters dictate internal policy on how the Church of Scientology, and the Narconon Centers, operate.

**A.   <u>The Narconon "Drug Treatment" Program</u>**

30.   The Narconon Program consists of eight stages or "books," each of which is substantially identical to the path of induction into the Scientology Religion.

31.   Book 1 is referred to as either "the Communications Course" or the "Therapeutic Training Routines Course."  It was designed to teach practitioners of the Scientology Religion communication techniques for the religious practice known as auditing.  The Therapeutic Training Routines are taken directly from Scientology scriptures.

32.   Book 2 of the Training Manuals is called "the New Life Detoxification Program." This Program requires Patients at Narconon Centers to:

a.   spend five to six hours per day in 140 – 180 degree dry saunas with limited access to drinking water;

b.   take up to 5,000 mg of Niacin per day; and

c.   take five tablespoons of vegetable oils per day.

33.   This protocol is identical to a Scientology religious practice called the "Purification Rundown."  It originates from Scientology scriptures known as the "Purification Series" and an L. Ron Hubbard Book called *Clear Body, Clear Mind*.  Completion of the Purification Rundown is a required ritual for practicing Scientologists in order to move up the "Bridge To Total Freedom," which is considered an essential practice in a Scientologist's spiritual journey.

34.   Book 3 of the Training Manuals is called "the Learning Improvement Course."  It instructs Patients that strict adherence to Narconon Program procedures will bring them success. It too comes directly from Scientology scriptures.

35.   Book 4 is called "the Communication and Perception Course."  It reiterates the content of Book 1 and comes from the same Scientology scriptures.

SECOND AMENDED CLASS ACTION COMPLAINT - 6

36.     Books 5 through 8 are referred to as the "Ethics Phase" of the program.  Books 5 through 8 in the Narconon Program have the same titles and content as courses in the Church of Scientology.  They set forth Scientology religious doctrine and advocate Scientology religious practices.

**B.   Narconon is a Recruitment Program for the Church of Scientology**

37.     Scientology publications show that the Narconon Program is part of Scientology's spiritual plan to "clear" the planet – i.e., for all humans to achieve enlightenment or a heightened spiritual state according to Scientology principles.  (To "go clear" is the ultimate spiritual goal for a Scientologist, achieved after one goes up the "Bridge to Total Freedom.")

38.     The Narconon Program and Narconon Centers are used to recruit people into the Church of Scientology and Patients who complete the Narconon Program are to be "route[d] to the nearest Org for further services if the individual so desires."

39.     The Church of Scientology and Narconon refer to the Narconon Program as the "Bridge to the Bridge" - the initial step in recruiting vulnerable people with addictions to Scientology and placing them on the "Bridge to Total Freedom," the key spiritual journey that practitioners of the Scientology religion undertake.

40.     The Church of Scientology recognizes and rewards Narconon Centers for indoctrinating Patients into Scientology through the Narconon Program.  For example, NFS displays a plaque from the Church of Scientology at its corporate headquarters that thanks its Executive Director Larry Trahant and "The Narconon Fresh Start Team" for introducing Patients to L. Ron Hubbard and "The Bridge."  The plaque states:

> Larry and his dynamic team at Narconon Fresh Start are hereby warmly thanked and highly commended for their dedication and hard work. They give us tremendous back up in introducing LRH to the world and are saving lives on a daily basis. There are thousands of beings who have taken their first steps on The Bridge, thanks to the compassion and efforts of this team.

41.     All Narconon Centers use the Narconon Program to indoctrinate unwitting Patients seeking drug rehabilitation into the Church of Scientology.

**C.   Defendants' False Representations**

42.     Patients or their family members paid, on average, over $30,000 for drug rehabilitation treatment at Narconon Centers.

43.     Contrary to Defendant's representations, the materials in the Narconon Program are not "a comprehensive drug and alcohol treatment program" but rather Scientology propaganda.

44.     Likewise, the materials in the Narconon Program are not "specific discoveries involving problems of substance abuse and rehabilitation" that L. Ron Hubbard made, but rather are substantially identical to the programs and literature provided to practitioners of the Scientology religion.

45.     The Narconon Program is not secular as claimed by Defendants but rather consists entirely of Church of Scientology practices and requires that Patients study Scientology doctrines.

46.     Patients are forced to engage in Scientology rituals such as multiple, day-long, hot sauna treatments combined with vitamin or mineral supplements, under the dangerous premise that this Scientology ritual can treat substance abuse and addictions.

47.     Defendants falsely advertise that the Narconon Program has a success rate between seventy (70%) and ninety (90%) percent.  Defendants make these false statements on websites they own and maintain for the purposes of recruiting people with addictions to participate in their program, in many phone conversations between Defendants or their representatives and Plaintiffs and Class Members.

48.     Defendants also make use of drug addiction interventionists – people who offer paid services coordinating "interventions" on behalf of the family and friends of drug addicts.  Defendants' representatives refer families of drug addicts who are seeking intervention services to particular interventionists.  These referrals in turn create a financial incentive for

SECOND AMENDED CLASS ACTION COMPLAINT - 8

1   interventionists to conceal from patients or their families that Narconon Centers are part of the

2   Church of Scientology.

3         49.     On information and belief, Defendants' representatives also expressly warn

4   intervention specialists against telling families that the Narconon Centers are associated with

5   Scientology.

### IV.    REPRESENTATIVE PLAINTIFFS' ALLEGATIONS
### Jamie Kerzner

7         50.     In approximately January, 2014, Plaintiff Jamie Kerzner ("Ms. Kerzner") was

8   searching on the Internet to find a drug rehabilitation facility for her son, Jeremy Kerzner

9   ("Jeremy").  She came upon a website that claimed to be a resource for assisting people with

10  finding drug rehabilitation facilities.  Ms. Kerzner called the telephone number, 866-684-6029,

11  listed on the website. She spoke with a representative named Josh who told her about the

12  Narconon program her and suggested she work with an intervention specialist. Josh arranged for

13  Frank Riedl of New Life Interventions to assist Ms. Kerzner in getting Jeremy to a NFS facility

14  located in Warner Springs, California. Ms. Kerzner paid for Jeremy to receive drug rehabilitation

15  treatment at NFS.

16        51.     Josh repeatedly assured Ms. Kerzner that Narconon offers a secular program with

17  a 76% success rate. Based on these representations Ms. Kerzner paid Defendants $33,000.00 to

18  provide drug treatment to Jeremy and an additional amount of $2,500 for an interventionist fee,

19  travel costs and expenses.

20        52.     Ms. Kerzner executed a contract that stated that "[t]he Narconon Program is

21  secular (NON-RELIGIOUS) in nature and does not include participation in any religious studies

22  of any kind" and "[t]he Narconon program was founded in 1966 by William Benitez, where it

23  was first used in the Arizona State Prison, after being inspired by the practical betterment

24  philosophy of author and humanitarian L. Ron Hubbard in the book, The Fundamentals of

25  Thought."

26

27

53.     After Jeremy arrived at NFS, it became apparent that the statements made by Josh were not true.

54.     Jeremy did not receive the promised care at NFS.

**Connie L. Rana**

55.     In early 2013, Plaintiff Connie L. Rana ("Ms. Rana") was searching on the Internet to find a drug rehabilitation facility for her daughter, Nicole Turner, ("Ms. Turner").

56.     Ms. Rana found an NFS website and called the telephone number listed on the website. She spoke with a representative named Ryan Warczak ("Mr. Warczak"), an admissions director at NFS. Mr. Warczak repeatedly told Ms. Rana that Narconon offers a secular program with a high success rate. Based on these representations, Ms. Rana agreed to pay for her daughter, Ms. Turner, to receive drug rehabilitation treatment at Rainbow Canyon Retreat, a NFS facility located in Caliente, Nevada.

57.     Ms. Rana paid a "program fee" of $33,000, and also an interventionist fee and cost of travel in the amount of $2,891.98.

58.     Ms. Rana executed a contract that stated that "[t]he Narconon Program is secular (NON-RELIGIOUS) in nature and does not include participation in any religious studies of any kind" and "[t]he Narconon program was founded in 1966 by William Benitez, where it was first used in the Arizona State Prison, after being inspired by the practical betterment philosophy of author and humanitarian L. Ron Hubbard in the book, The Fundamentals of Thought."

59.     After Ms. Turner arrived at Rainbow Canyon Retreat, it became apparent that the statements made by Mr. Warczak were not true.

60.     Ms. Turner did not receive the promised care at Rainbow Canyon Retreat.

# V.  RELATIONSHIP BETWEEN DEFENDANTS

61.  Plaintiffs incorporate by reference all preceding paragraphs.

62.  ABLE and NI govern and control nearly every aspect of all Narconon Centers' business activities.

63.  Western also exerts control over several Narconon Centers, including NFS, and, together with ABLE and NI, governs and controls nearly every aspect of Narconon Centers' business activities.

64.  NI publishes the Narconon Program operations manuals and requires that individual Narconon Centers such as those operated by NFS abide by these manuals in their operations.

65.  These manuals show that NI and ABLE have the ultimate authority over the employees of all Narconon Centers.

66.  These manuals also show that Western also shares the ultimate authority over the employees of many Narconon Centers including but not limited to those owned by NFS.

67.  For example, the manuals state that Narconon Centers cannot demote, transfer, or dismiss a permanent staff member without approval from the Senior Director of Administration at NI.

68.  Similarly, NI, ABLE, and in some instances Western, have the ultimate authority over the hiring of staff members at Narconon Centers.

69.  NI, ABLE, and Western have the ultimate authority over the hiring, termination, and discipline of staff members at Centers owned or operated by NFS.

70.  The operations manuals require staff members at Narconon Centers to report misconduct or, in Scientology terms, "nonoptimum conduct" to a central Quality Control Supervisor at NI.

71.  NI investigates "misconduct" (conduct contrary to the principles, doctrines, and administrative directives of Scientology) at Narconon Centers and may take disciplinary action against the staff members of Narconon Centers.  For some Narconon Centers such as those

operated by NFS, the investigation and disciplinary process is completed jointly by NI and Western.

72.     NI and Western receive a percentage of the weekly gross income earned by many or all of the Narconon Centers including those operated by NFS.

73.     NI requires Narconon Centers, including those owned or operated by NFS to send their detailed weekly reports containing statistics of more than 40 different metrics.

74.     NI, and in some cases Western, review these weekly reports and order changes based on increases or decreases in the statistics in the reports.  NI and Western both review the weekly reports and order changes for Centers operated by NFS.

75.     NI, ABLE, and in some instances Western, require that Narconon Centers receive approval on all promotional materials before dissemination.  NFS must obtain NI, ABLE, and Western's approval of all promotional materials.

76.     Narconon Centers must obtain prior approval of their Internet websites from NI, ABLE, and in some instances, Western.  Specifically, NFS is required to obtain approval of their Internet websites from NI, ABLE, and Western before said websites are published to the Internet.

77.     NI, ABLE, and in some instances Western, also participate in creating advertising materials for Narconon Centers and mandate approval of all advertising content.  NI, ABLE, and Western participate in creating advertising material and require approval of advertising content for NFS.

78.     NI requires Narconon Centers, including those operated by NFS, to maintain a "building account fund" in which monies from the gross income fund are deposited weekly. This money is used to purchase premises for new Narconon Centers and also serves as a cushion to protect the organization in times of financial hardship.

79.     The "building account fund" is under the control of NI.

80.     NI, ABLE, and in some instances Western, conduct "tech inspections" at Narconon Centers.  NI, ABLE and Western conduct such "tech inspections" at NFS.

81.     These inspections entail monitoring the manner in which Narconon Centers deliver the Narconon Program to Patients and making corrections to ensure the Program is applied consistently at all Centers and in accordance with the principles of the Scientology religion.

82.     NI, ABLE, and in some instances Western, instruct staff at Narconon Centers, including those operated by NFS, as to the exact manner in which they are to perform their services and deliver/implement the Narconon Program.

83.     NI, ABLE, and in some instances Western, publish the materials authorized to be sold in Narconon Centers' bookstores, including bookstores located inside NFS facilities.

84.     The NI Director of Technology and Approval demands and ensures that there are good photos of L. Ron Hubbard visible in every facility and that materials are available to Patients and staff as to L. Ron Hubbard's contributions in the field of alcohol and drug rehabilitation.

85.     NI, ABLE, and in some instances Western, provide direction and support to individual Narconon Centers, including those operated by NFS, on legal problems, including Patient requests for refunds and complaints to the Better Business Bureau or other consumer protection entities.

86.     NI, ABLE, and in some instances Western, hold final authority over all decisions at Narconon Centers related to hiring and firing, delivery of services, finances, advertising, training, and general operations.  In the case of centers operated by NFS said final authority is held and exercised by NI, ABLE, and Western.

87.     NI, ABLE, and Western use the Narconon Program to recruit for and promote the Scientology religion under the guise of providing drug rehabilitation.

88.     NI, Western, and ABLE are all principals served by their agents, the individual Narconon Centers.

## VI. CLASS ACTION ALLEGATIONS

89.     Plaintiffs and Class Members bring all claims as a class action pursuant to 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. This action satisfies the requirements set forth under Federal Rules of Civil Procedure 23(a), as well as the requirements for certification under Rules 23(b)(2) and (b)(3).

90.     Plaintiffs advance this action on behalf of the following Class:

**ABLE and NI National Class**

> All individuals in the United States who paid for and/or participated in drug rehabilitation services at a Narconon Center and (1) who did not sign an admissions agreement, or (2) whose admissions agreement does not contain a mandatory arbitration clause, or (3) whose admissions agreement does contain a mandatory arbitration clause but that clause does not specify that it applies to related entities.

> Excluded from the Class are Defendants, their legal representatives, assigns, and successors and any entity in which Defendants have a controlling interest.  Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.   Any claims for personal injury are also excluded from the Class.

**Western National Class**

> All individuals in the United States who paid for and/or received drug rehabilitation services at a Narconon Center that is affiliated with Western and (1) who did not sign an admissions agreement, or (2) whose admissions agreement does not contain a mandatory arbitration clause, or (3) whose admissions agreement does contain a mandatory arbitration clause but that clause does not specify that it applies to related entities.

> Excluded from the Class are Defendants, their legal representatives, assigns, and successors and any entity in which Defendants have a controlling interest.  Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

SECOND AMENDED CLASS ACTION COMPLAINT - 14

**NFS National Class**

> All individuals in the United States who paid for and/or participated in drug rehabilitation services at Narconon Centers owned or operated by NFS <u>and (1) who did not sign an admissions agreement, or (2) whose admissions agreement does not contain a mandatory arbitration clause</u>.

> Excluded from the Class are Defendants, their legal representatives, assigns, and successors and any entity in which Defendants have a controlling interest.  Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

91.   Claims for personal injury are specifically excluded from the Class.

92.   The "Class Period" means:

   a.   Three years prior to the filing of the Complaint in this action for Causes of Action I, III and IV.

   b.   Four years prior to the filing of the Complaint in this action for Cause of Action IV.

93.   **Numerosity:** Although the actual size of the Class is uncertain, Plaintiffs are informed and believe the Class is comprised of many hundreds of individuals who either paid for or were treated at each of the many Narconon Centers throughout the United States, making joinder impractical.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

94.   **Commonality:** There are questions of law and fact common to Plaintiffs and the Class, including the following:

- Whether the Narconon Program is secular;

- Whether Defendants represented the Narconon Program as secular;

- Whether Defendants falsely represented the success rate of the Narconon Program;

- Whether the Narconon Program consists of the tenets of the Scientology religion;

---

SECOND AMENDED CLASS ACTION COMPLAINT - 15

- Whether the Narconon Program requires participants to study the beliefs of and engage in practices of the Scientology religion;

- Whether Defendants knew or should have known about the falsity of their claims;

- Whether Defendants failed to disclose the falsity of their claims to Plaintiffs and the Class;

- Whether Defendants engaged in misrepresentations and failures to disclose material facts that violated California Business and Professions Code Section 17200;

- Whether Defendants' actions, including their misrepresentations, were in violation of California Civil Code section 1770(a)(5);

- Whether Defendants' advertising is false, untrue, or misleading within the meaning of California Business and Professions Code Section 17500;

- Whether Defendants acted intentionally in making the misrepresentations alleged in this Complaint;

- Whether Defendants, through their conduct, received money that, in equity and good conscience, belongs to Plaintiffs and Class Members; and

- Whether Plaintiffs and Class Members are entitled to damages, equitable relief, and injunctive relief.

95.     **Typicality:** Plaintiffs' claims are typical of the claims of the Class Members, in that Defendants made the same misrepresentations and material omissions to the Plaintiffs, the Class, and the public through substantially identical websites and marketing materials.  Plaintiffs, like all Class Members, paid for treatment or attended a Narconon Center for treatment under the Narconon Program.  Plaintiffs, like all Class Members, suffered a common injury.  None of them received the secular drug rehabilitation and therapy services with a high success rate for which they paid.  Consequently, both Plaintiffs and Class Members incurred monetary damages

including but not limited to the cost of treatment.  The factual basis of Defendants' misconduct is common to all Class Members.

96.  **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained counsel with several decades of experience in prosecuting consumer class actions, including actions involving defective rehabilitation programs, misrepresentations and failures to disclose material information regarding products and services, and violation of consumer protection statutes.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

97.  **Predominance of Common Questions:** Common questions of law and fact predominate over any questions involving individualized analysis.  Fundamentally there are no material questions of fact or law that are not common to the Class.  All members of the class sought treatment in the same program, developed and controlled by the same Defendants.  All were exposed to the same misrepresentations.

98.  **Superiority:**  Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the subject controversy.  Because of the relatively small size of the individual Class Members' claims, and because of the health and lifestyle challenges many addicts face, most Class Members likely would find the burden and cost of litigating their individual claims to be prohibitive, and will therefore have no effective remedy at law.  Thus, absent a class action, Class Members will continue to incur damages and Defendants' misconduct will proceed without remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

## VII.   FIRST CAUSE OF ACTION

### (Violation of California's Consumers Legal Remedies Act ("CLRA"))

### (Brought on Behalf of the Entire Class)

99.   Plaintiffs incorporate by reference all preceding paragraphs.

100.   Defendants are persons as defined by California Civil Code §1761(c).

101.   Defendants violated California Civil Code §1770(a)(5) and (a)(7) when:

    a.   Defendants represented, through their advertising and other express representations, that the drug rehabilitation services they offered were "secular" and not associated with any religion when, in fact, their treatment program required Patients to study Scientology and engage in Scientology religious rituals as "treatment."

    b.   Defendants falsely represented that the Narconon Program/Narconon Centers had a success rate of seventy (70%) percent or higher.

102.   Defendants' deceptive practices, including the use of deceptive marketing practices, were specifically designed to induce Plaintiffs and members of the Class to pay money to Defendants for drug treatment at a Narconon Center.

103.   To this day, Defendants continue to engage in unlawful practices in violation of the California Consumers Legal Remedies Act.

104.   Defendants' deceptive trade practices are likely to continue without court intervention.

105.   Plaintiffs therefore seek injunctive relief pursuant to Cal. Civ. Code § 1782(d).

106.   Plaintiffs sent a notice to Defendants as required by Cal. Civ. Code § 1782(a). Defendants did not respond.

107.   Plaintiffs are entitled to all available relief under Cal. Civ. Code § 1780, including Plaintiffs' attorney's fees, costs of this action, and an injunction restraining Defendants from further engaging in the deceptive trade practices complained of herein.

## VIII.   SECOND CAUSE OF ACTION

**(Violation of California's Unfair Competition Law)**

**(Brought on Behalf of the Entire Class)**

108.    Plaintiffs incorporate by reference all preceding paragraphs.

109.    California Business and Professions Code § 17200 et seq. (the "UCL") prohibits acts of unfair competition, which includes unlawful business practices.

110.    Defendants have engaged in and continue to engage in unlawful business practices by representing, through their advertising, warranties, and other express representations that the Narconon Program had characteristics it did not actually have.

111.    Defendants violated the UCL by falsely representing that the Narconon Program is of a particular standard or quality, including representations that the Narconon Program is "secular," "not associated with any religion," and has a success rate of seventy (70%) percent or higher.

112.    Defendants' deceptive practices constitute an unlawful business practice in that they violate California's Consumers Legal Remedies Act and California's False Advertising Law ("FAL").

113.    Defendants' deceptive practices constitute a fraudulent business practice under the UCL in that Defendants made and continue to make false representations about the quality, nature, and success rate of the Narconon Program in order to induce vulnerable individuals suffering from serious addictions (a) to pay money, sometimes tens of thousands of dollars, to participate in the Program and (b) to join the Scientology religion.

114.    Defendants' deceptive practices constitute an unfair business practice under the UCL in that they violate established public policy, including the CLRA and the FAL, and the gravity of Defendants' conduct and the harm to Plaintiffs and the Class outweighs any utility or benefit.

115.    To this day, Defendants have engaged and continue to engage in unlawful business practices by continually misrepresenting facts about the Narconon Program regarding its characteristics, nature, association with Scientology, and success rates.

116.    As a direct and proximate cause of Defendants' unfair and unlawful methods of competition and unfair, deceptive, or unlawful acts or practices, Plaintiffs and the Class Members have lost money they have paid to receive treatment for their addictions.

117.    As a direct result of their unlawful, unfair, or fraudulent practices, Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and the Class Members pursuant to §17203 of the California Business & Professions Code.

118.    Plaintiffs and all respective Class Members are entitled to all available relief under the California Unfair Competition Law, Bus. & Prof. Code § 17200 et seq., including, without limitation, restitution and injunctive relief.

## IX.    THIRD CAUSE OF ACTION

### (Violation of California's False Advertising Law)

### (Brought on Behalf of the Entire Class)

119.    Plaintiffs incorporate by reference all preceding paragraphs.

120.    Plaintiffs and Defendants are both "person[s]" as defined by California Business & Professions Code §17506.  California Business & Professions Code §17535 authorizes a private right of action on both an individual and representative basis.

121.    The misrepresentations, acts, and non-disclosures by Defendants of the material facts detailed in this Complaint constitute false and misleading advertising and therefore violate Business & Professions Code §§ 17500 *et seq.*

122.    At all times relevant, Defendants' advertising and promotion regarding its drug rehabilitation program, the Narconon Program, were untrue, misleading, and likely to deceive the reasonable consumer and the public.

123.    In fact, Defendants deceived Plaintiffs and Class Members similarly situated by representing that the Narconon Program was "secular," "not associated with any religion," and had a success rate of seventy (70%) percent or higher.

124.    Defendants knew or had reason to know, and failed to disclose that, their Narconon Program was not secular, was associated with and consisted of the teachings of the Church of Scientology, and had a success rate much lower than what was stated.

125.    Defendants engaged in the false and/or misleading advertising and marketing as alleged herein with the intent to directly or indirectly induce the Plaintiffs and Class Members into entering or paying for treatment at their facilities when Defendants knew, or had reason to know, that their representations were in fact false.

126.    Defendants knew or should have known that the statements and/or omissions were untrue or misleading, and acted in violation of California Business & Professions Code §§ 17500 *et seq.*

127.    Plaintiffs and Class Members have suffered injury in fact and have lost money and/or property as a result of Defendants' false advertising.

128.    Plaintiffs and Class Members were deceived by and consequently injured because Defendants falsely advertised the Narconon Program as a secular treatment program with a 70 percent success rate or higher. Plaintiffs and Class Members would have chosen a different drug rehabilitation facility if: (1) Class Members and Plaintiffs had knowledge about Narconon Program's and/or Narconon Center's ties to Scientology; or (2) Defendants had not falsely represented a high success rate for the Narconon Program.

129.    This false and misleading advertising presents a continuing threat to consumers, particularly vulnerable consumers suffering from drug addictions and the family members who seek drug rehabilitation help for them.

130.    Defendants' misrepresentations already have and are likely to deceive Class Members.

SECOND AMENDED CLASS ACTION COMPLAINT - 21

131.    As a direct and proximate result of the aforementioned acts and representations of Defendants, Defendants received and continue to hold monies rightfully belonging to Plaintiffs and the Class Members, all of whom who were induced into entering the Defendants' facilities to receive treatment during the Class period or paying for others to enter the facilities during the Class Period.

132.    Plaintiffs and all respective Class Members are entitled to all available relief under the California Bus. & Prof. Code § 17535, including, without limitation, restitution and injunctive relief.

## X.      FOURTH CAUSE OF ACTION

### (Negligent Misrepresentation)

### (Brought on Behalf of the Entire Class)

133.    Plaintiffs incorporate by reference all preceding paragraphs.

134.    Defendants negligently misrepresented to the public, including Plaintiffs and Class Members, that the Narconon Program was "secular," "not associated with any religion," and had a success rate of seventy (70%) percent or higher.

135.    Defendants made the misrepresentation with the intention to induce Plaintiffs and Class Members to pay for and enroll in Narconon Centers and participate in the Narconon Program.

136.    Plaintiffs and Class Members reasonably relied upon Defendants' advertising representations and, in reliance on them, paid for and/or sought treatment in Narconon Centers and participated in the Narconon Program.

137.    Defendants made the misrepresentations alleged herein when they knew or should have known these representations to be untrue.  Defendants had no reasonable basis for believing the representations to be true.

138.    As a proximate result of Defendants' negligent misrepresentations, Plaintiffs and Class Members incurred damages including but not limited to out-of-pocket costs for treatment at the Narconon Centers.

139.    Plaintiffs request this court award actual and punitive damages and all other relief just and proper for Defendants' tortious conduct.

## XII.    PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request the Court enter judgment against Defendants, as follows:

A.    An order certifying the proposed Plaintiff Class, designating Plaintiffs as named representatives of the Class and designating the undersigned as Class Counsel;

B.    A declaration that Defendants are financially responsible for notifying all Class Members of its wrongdoing;

C.    An order enjoining Defendants from further deceptive advertising, marketing, and sales practices with respect to its "drug treatment programs;"

D.    An order enjoining Defendants from continuing to offer its deceptive "drug treatment programs;"

D.    An award to Plaintiffs and the Class of compensatory, exemplary and statutory damages, including interest, in an amount to be proven at trial;

E.    A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the operation of their drug treatment centers, or to make full restitution to Plaintiffs and the Members of the Class;

F.    An award of attorneys' fees and costs, as allowed by law;

G.    An award of pre-judgment and post-judgment interest, as provided by law;

H.    Leave to amend the Complaint to conform to the evidence produced at trial; and

I.    Such other or further relief as may be appropriate under the circumstances.

## XI.    DEMAND FOR JURY TRIAL

1    Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of any and all issues in

2    this action so triable of right.

3

4    Dated:  March 24, 2016.

5    RESPECTFULLY SUBMITTED AND DATED this 24th day of March, 2016.

6                                   TERRELL MARSHALL LAW GROUP PLLC

7

8                            By:   /s/ Beth E. Terrell, SBN #178181
                                   Beth E. Terrell, SBN #178181
9                                  Email:  bterrell@terrellmarshall.com
                                   Mary B. Reiten, SBN #203142
10                                 Email:  mreiten@terrellmarshall.com
                                   936 North 34th Street, Suite 300
11                                 Seattle, Washington  98103-8869
                                   Telephone:  (206) 816-6603
12                                 Facsimile:  (206) 350-3528

13
                                   Michael F. Ram, SBN #104805
14                                 Email:  mram@rocklawcal.com
                                   Susan S. Brown, SBN #287986
15                                 Email:  sbrown@rocklawcal.com
                                   RAM, OLSON, CEREGHINO & KOPCZYNSKI
16                                 101 Montgomery Street, Suite 1800
                                   San Francisco, California  94104
17                                 Telephone:  (415) 433-4949
                                   Facsimile:  (415) 433-7311
18

19                                 David E. Miller, SBN #294095
                                   Email:  david@sllawfirm.com
20                                 Syed Ali Saeed, *Admitted Pro Hac Vice*
                                   Email:  ali@sllawfirm.com
21                                 SAEED & LITTLE LLP
                                   1433 North Meridian Street, Suite 202
22                                 Indianapolis, Indiana  46202
                                   Telephone:  (317) 721-9214
23                                 Facsimile:  (888) 422-3151

24
                                   *Attorneys for Plaintiffs*
25

26

27

CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on _____March 24, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

William H. Forman, SBN #150477
Email:  wforman@scheperkim.com
SCHEPER KIM & HARRIS LLP
601 West 5th Street, 12th Floor
Los Angeles, California 90071
Telephone:  (213) 613-4682
Facsimile:  (213) 613-4656

*Attorneys for Defendants Narconon Int'l, Narconon Fresh Start d/b/a WarnerSprings and Association for Better Living and Education*

Dennis P. Howell, SBN #78806
Email:  dphowell@grunskylaw.com
Rosemary Rovick
Email:  rrovick@grunskylaw.com
GRUNSKY, EBEY, FARRAR & HOWELL
240 Westgate Drive
Watsonville, California 95076
Telephone: (831) 722-2444
Facsimile:  (831) 722-6153
Email:  dphowell@grunskylaw.com

Thomas G. Beatty, SBN #75794
Email:  thomas.beatty@mcnamara.com
McNAMARA, NEY, BEATTY, SLATTERY, BORGES AND ARNBACHER
1211 Newell Avenue
Walnut Creek, California  94596
Telephone:  (925) 939-5330
Facsimile:  (925) 939-0203

*Attorneys for Defendants Halcyon Horizons, Inc. dba Narconon of Northern California and dba Narconon Redwood Cliffs*

SECOND AMENDED CLASS ACTION COMPLAINT - 25

1       DATED this 24th day of March, 2016.

2                                TERRELL MARSHALL LAW GROUP

3

4                              By:   /s/ Beth E. Terrell, SBN #178181

5                                  Beth E. Terrell, SBN #178181
                                 Email:  bterrell@tmdwlaw.com

6                                  936 North 34th Street, Suite 300
                                 Seattle, Washington  98103-8869

7                                  Telephone:  (206) 816-6603
                                 Facsimile:  (206) 350-3528

8

9                                *Attorneys for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27